IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * |
| | *    CRIMINAL NO. ELH-25-00285 |
| ADOLFO HERNANDEZ-RAMOS, | * |
| | * |
| Defendant. | * |
| | * |
| ******* | |

**GOVERNMENT'S DETENTION MEMORANDUM**

The United States of America, by and through undersigned counsel, hereby submits the following memorandum and moves for the detention of Adolfo Nimrod Hernandez-Ramos ("the Defendant"). For the reasons stated below, the Government submits that this Court should hold a detention hearing because the defendant poses a serious risk of flight under 18 U.S.C. § 3142(f)(2). Further, the Court should detain the defendant pending trial because "no condition or combination of conditions will reasonably assure the appearance of" the defendant for future proceedings and "no condition or combination of conditions will reasonably assure. . . the safety of any other person and the community." *See* 18 U.S.C. § 3142 (e)(1); *id.* § 3143(c).

**PROCEDURAL HISTORY**

On or about August 14, 2025, a criminal complaint and arrest warrant were issued against the Defendant in the District of Maryland by United States Magistrate Judge Douglas Miller, alleging one count of assaulting, resisting, or impeding a federal officer in violation of 18 U.S.C. § 111. [ECF No. 1]. This charge followed an investigation where, on June 6, 2025, the Defendant assaulted, resisted, and impeded two Immigration and Customs Enforcement ("ICE") officers while being taken into custody for an immigration related violation in Catonsville, Baltimore County, Maryland. Immediately following this incident, the Defendant was placed into the custody of ICE

1

Enforcement Removal Operations ("ERO") to begin deportation proceedings and was transported outside of the District of Maryland.

On or about August 27, 2025, the Defendant was arrested on this offense while at the Alexandria Staging Facility in the Western District of Louisiana. That same day, the Defendant appeared for an initial appearance in that District before United States Magistrate Judge Jospeh H. L. Perez-Montes. At that time, counsel was appointed to represent the Defendant. [ECF No. 5-1]. The Defendant then waived an identity hearing, retained his right to a detention hearing in the District of Maryland, and an order was issued committing him to the District of Maryland for further proceedings. [ECF No. 5-2].

On or about September 25, 2025, the Defendant was charged by Criminal Information with one count of assaulting, resisting, or impeding a federal officer in violation of 18 U.S.C. § 111. [ECF No. 6]. The Defendant was transported to the District of Maryland on October 14, 2025. His initial appearance was scheduled for October 16, 2025. On October 15, 2025, the parties discussed the case in advance of the initial hearing and determined that detention would be contested. Based upon this information, the Government now requests a detention hearing.

## LEGAL AUTHORITY AND ARGUMENT

### I. Detention Under the Bail Reform Act

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.* In fact, under the Bail Reform Act, the Government may proceed by proffer. *See United States v. William*, 753 F. 2d 329, 331 (4th Cir. 1985) ("Evidentiary proffers are approved by 18 U.S.C. § 3142(f)"); *see also United States v. Vane*, 117 F.4th 244, 250-51 (4th Cir. 2024); *United States v. Hammond*, 44 F. Supp.

2d 743, 745 (D. Md. 1999).

The Bail Reform Act, 18 U.S.C. § 3142(f), allows for pretrial detention in appropriate cases. Under 18 U.S.C. § 3142(f)(1)(A), the Government can move for a detention hearing in a case that involves "a crime of violence." The definition for the term "crime of violence" includes "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another…" 18 U.S.C. § 3156(a)(4).

A hearing should be held in any other case that involves:

(A) a serious risk that such person will flee; or

(B) a serious risk that such person will obstruct of attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f)(2).

At that hearing, if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." § 3142(e)(1). In this case, a hearing is warranted because there is "a serious risk that [the defendant] will flee," § 3142(f)(2)(A), and detention is appropriate because "no condition or combination of conditions will reasonably assure the appearance of the person as required," *id.* § 3142(e)(1).

A finding that the defendant presents a serious risk of flight (thus permitting a hearing) and is not likely to appear (thus warranting detention) must be supported by a preponderance of the evidence. *See United States v. Vane*, 117 F.4th 244, 251 (4th Cir. 2024); *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (unpublished). The serious-risk-of-flight standard "requires showing that it is more likely than not that a serious risk of flight exists, not that it is more likely than not that the defendant will flee." *United States v. Perez-Vasquez*, 2025 WL 1248651, at *7

3

(N.D.N.Y. Apr. 22, 2025). While the standards for a detention hearing (risk of flight) and detention itself (likelihood of non-appearance) are worded differently, they are commonly and appropriately considered and resolved at the same hearing. *See United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023).

In determining whether there is a serious right of flight, a court may consider the defendant's incentive to flee, ability to flee, ties to the jurisdiction and the United States, and reliability and trustworthiness. *United States v. Reymundo Reymundo*, Crim No. MJM-25-187, 2025 WL 1940342, at *4 (D. Md. July 15, 2025) (citing *United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at *3 (E.D. Ky. Mar. 5, 2025)).

In determining whether to detain a defendant pending trial, the Court should analyze the following four factors under 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.* A review of these factors shows that detention is appropriate in this case.

**II.     The Possibility of Immigration Detention is Not an Appropriate Consideration Under the Bail Reform Act**

Although an immigration detainer is present in this case, the existence of such a detainer is *not* an appropriate factor under the Bail Reform Act. *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). In *Diaz-Hernandez*, the defendant argued that the existence of an immigration detainer negated any risk of flight because the defendant, if released, would be transferred to immigration custody from which he could not flee. The Ninth Circuit squarely rejected that argument. As it explained, the "Bail Reform Act mandates an individual evaluation," and that individualized evaluation "does not include consideration of an immigration detainer or the

4

possibility that the defendant, if released from criminal custody, would be held in immigration custody." *Id*. The Court reasoned:

> [D]etention of a "criminal defendant pending trial pursuant to the [Bail Reform Act] and detention of a removable alien pursuant to the [Immigration and Nationality Act] are separate functions that serve separate purposes and are performed by different authorities." *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019). A district court, addressing whether pre-trial detention is appropriate under the Bail Reform Act, may not speculate as to what may or may not happen in the future to the defendant under a different statutory and regulatory regime.

*Id.*[1] The Ninth Circuit concluded that "in assessing a motion to detain a defendant pending trial, a district court must conduct an individualized evaluation that is guided by the factors articulated at 18 U.S.C. § 3142(g). A defendant's immigration detainer is not a factor in this analysis, whether as evidence for or against a finding that the defendant poses a risk of nonappearance." *Id.*

Another court, canvassing the case law, concluded at the threshold § 3142(f)(2)(A) stage that "considering an immigration detainer would be improper. As distinct from a defendant's connections to a foreign country, likelihood of deportation, fear of deportation, previous deportations, or other similar factors, an immigration detainer's appropriate role in deciding whether to order a detention hearing, or to order detention, is as follows: none." *United States v. Marroquin-Ramirez*, 2025 WL 1248652, at *5 (N.D.N.Y. Apr. 17, 2025); see also, e.g., *United States v. Lett*, 944 F.3d 467, 470 (2d Cir. 2019) ("[N]either the [Bail Reform Act] nor the [Immigration and Nationality Act] precludes the government from exercising its detention authority pursuant to the other statute."); *United States v. Perez-Vasquez*, 2025 WL 1248651, at *5-6 (N.D.N.Y. Apr. 22, 2025) (collecting cases and concluding that "the weight of reasoned authority prohibits courts from considering the existence of an immigration detainer even as a non-dispositive factor in determining whether or not the defendant

---

1.  The *Reymundo Reymundo* Court, while stating that an ICE detainer might be relevant to a defendant's history and characteristics under 18 U.S.C. 3142(g)(3), did agree with the Ninth Circuit's point that "it would be improper for a district court to speculate as to what may or may not happen in the future to the defendant after he is released to ICE custody pursuant to an immigration detainer." 2025 WL 1940342, at *5 (internal quotation omitted).

poses a serious risk of flight for purposes of 18 U.S.C. § 3142(f)(2)(A)"); *United States v. Hernandez-Us*, 2025 WL 918695, at *7 (W.D. Pa. Mar. 26, 2025) ("[T]he prospect of the alien defendant's immigration detention or involuntary deportation if released from criminal custody is not to be considered in analyzing eligibility for pretrial detention as a serious flight risk." (internal quotation marks omitted)).

Finally, "[a] district court cannot assume based solely on the existence of an immigration detainer that ICE will take *and maintain* custody of a criminal defendant until completion of their criminal proceedings. In other words, the existence of an immigration detainer cannot be properly relied upon to rebut the notion that a defendant may have an opportunity to flee prosecution upon release under the BRA." *Reymundo Reymundo*, 2025 WL 1940342, at *6 (emphasis in original).

Indeed, the Immigration and Nationality Act ("INA") is a separate source of authority, administered by a separate agency, for a separate purpose. A detainer issued pursuant to the INA facilitates the removal of an individual from the country. The INA does not permit ICE to hold a defendant for prosecution purposes. ICE proceeding with a detainer under the INA does not preclude this Court's authority to conduct criminal proceedings.

The case law makes clear that the existence of an immigration detainer is irrelevant to the Court's analysis under the Bail Reform Act. With respect to both the threshold question of whether a detention hearing is warranted and the question of whether the defendant should be detained, the Court should consider only the ordinary factors under the Bail Reform Act, including the risk of flight, the nature of the charges, the weight of the evidence, and the history and characteristics of the defendant.

### III. A Detention Hearing is Warranted Because There is a Serious Risk of Flight, and the Defendant Should be Detained

The Government is entitled to a detention hearing because the defendant poses a serious risk of flight. The United States' burden is to demonstrate that the defendant poses a "serious risk

6

of flight *in the absence* of any conditions of release." *United States v. White*, 2021 WL 2155441, at *12 (M.D. Tenn. May 27, 2021) (emphasis in original). Further, "the Government must demonstrate that it is more likely than not that there is a serious *risk* that the defendant will flee, not that it is more likely than not that the defendant *will* flee." *United States v. Romero-Martinez*, 2024 WL 965150, at *4 (D. Conn. Mar. 6, 2024). No one factor is dispositive; rather, the totality of the evidence must be considered. And while the Court may not consider the existence of an immigration detainer, the Court may consider and weigh the fact that an illegal reentry case involves a citizen of a foreign country who has no right to enter or lawfully remain in the United States when assessing whether a defendant is a flight risk, *see United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015).

For the sake of efficiency, the Government addresses the Section 3142(g) factors in the following section as they relate to both the threshold question of whether there is a serious risk of flight as well as the merits question of whether there are conditions that can reasonably assure the defendant's appearance and the safety of the community.

    A.    **The Nature and Circumstances of the Offense Charged**

On June 6, 2025, Immigration and Customs Enforcement (ICE) officers were conducting surveillance in the 300 block of Melvin Avenue in Catonsville, Maryland, to locate an individual with a pending final order of removal. At approximately 10:00 am, while looking for that specific subject, officers observed the Defendant exit a nearby residence and get into a vehicle. Officers recognized the Defendant as an individual for whom they had previously obtained information indicating he was potentially illegally in the country. As the Defendant drove away from the residence, ICE officers decided to follow him.

The Defendant drove to the area of 5800 Baltimore National Pike, Catonsville, Maryland, where he parked his vehicle near a Ross Department store. As officers pulled towards the

Defendant's car, he exited his vehicle. An officer, wearing a ballistic vest with "HSI" on it, also exited his vehicle and approached the Defendant. As the officer walked up, he said, "Hey, man" and attempted to make contact with the Defendant's arm. Upon hearing the officer, the Defendant looked at his ballistic vest with HSI markings and began running away from the officer towards the direction of the Ross store. The officer pursued the Defendant and yelled, "Stop police!" A second officer also chased the Defendant, and once they crossed the threshold of the business, all three fell to the ground. As officers attempted to handcuff the Defendant, he was repeatedly told that he was under arrest and ordered to put his hands behind his back. The Defendant refused to comply, tensed his body, and began to struggle and attempt to wrestle away from officers. The Defendant responded to the officers in English, which indicated to the officers that the Defendant understood their commands.

As the officers continued to effectuate the arrest, the Defendant questioned why he was being arrested. A crowd of onlookers started to form, encouraging the Defendant to resist. Attempting to de-escalate the situation, one of the officers indicated that he had a "warrant" in the car. However, there was no actual warrant for the Defendant's arrest. Officers again advised that he was under arrest and that they were "Homeland Security." In response, the Defendant replied, "So… so! Show me the warrant." When told to cooperate, he stated, "Why would I want to cooperate for what? I don't want to cooperate with you!" During the encounter, the Defendant kicked at them, continued to flail his arms about, grabbed a table, and clinched his arms and legs together to prevent his arrest.

Officers continued to try to place the Defendant into custody, and he actively fought back and resisted. During the incident, one of the officers told the Defendant not to kick him, and the Defendant responded, "I want to kick your head, bro… you don't want to respect my rights, I want to kick your head!" At one point, officers were able to secure one handcuff on the Defendant but

8

struggled to get his other hand cuffed. The Defendant said "I want to hit you with this" while cocking his handcuffed right hand behind the side of his head. Soon thereafter, the Defendant grabbed the other open cuff and told an officer, "I'm going to slice your eye out." Eventually, other uniformed law enforcement officers arrived and assisted with the arrest of the Defendant. After continuing to struggle with the arresting officers, the Defendant was taken into custody. On the way out of the store, heading to the transport vehicle, the Defendant attempted to headbutt one of the officers.

The entire interaction – from the officers' first contact with the Defendant until his being taken into custody – was approximately 18 minutes. During that entire time, he resisted, struggled with, threatened, and fought the two uniformed officers. He continued to be non-compliant even though he knew they were federal officers. Due to the entirety of his actions, both officers suffered several injuries, including a bruised knee, an injured right ankle/Achilles, and lacerations to their arms and hands, as depicted here:






9

Here, the Defendant entered the country illegally. When confronted by law enforcement, he fled from them. The Defendant then fought the officers to prevent apprehension. Though they identified themselves as officers, the Defendant continued to forcefully resist and expressed his intent not to be compliant. His willingness to disregard lawful orders when it suits him "undermines any confidence in his reliability and trustworthiness to comply with court orders." *Reymundo Reymundo*, 2025 WL 1940342, at *8. Accordingly, when considering the nature and circumstances of the offense, this factor weighs in favor of detention.

      **B.**    **The Weight of the Evidence Against the Person**

The evidence in this case is strong. The Defendant's actions were captured on body-worn camera video. The video depicts him *fleeing,* resisting, struggling, threatening, and assaulting the ICE officers for over 18 minutes. In addition, there were several onlookers at the store, including a store manager who called 911 and reported that ICE was "…trying to arrest a guy and the guy is being combative." Furthermore, towards the end of the encounter, other uniformed law enforcement officers arrived at the scene and observed the Defendant's continued combative, assaultive, and non-compliant conduct. Several photos were taken depicting the injuries to both ICE officers following the incident. Given the weight of this evidence, the Defendant likely will be convicted and, if convicted, faces the prospect of incarceration potentially up to the statutory maximum of any charges he faces at trial. After serving that period of incarceration, the Defendant would likely face deportation. He has every incentive to flee those consequences. The Government believes that this factor also weighs in favor of detention.

      **C.**    **The History and Characteristics of the Person**

Under the third factor, the court is to consider a defendant's criminal convictions, arrests, employment status, ties to the community, and past performance while on release. In fairness to him, the Defendant does not appear to have any prior criminal convictions. However, he has had

10

numerous contacts with the criminal justice system, including those for disorderly conduct, assault, and other domestic violence-related offenses. No information is currently available regarding his employment status. Based on information that the Government has, and discussed in further detail below, he reports residing in Baltimore County and has individuals in Maryland he considers family.

Despite his lack of criminal convictions and potential ties to the community, this information does not overcome the fact that he is still a serious risk of flight. First and foremost, the Defendant is a citizen and national of Honduras and not a native, citizen, or national of the United States. Since his arrest, it has been confirmed that he was not legally admitted nor arrived with permission in the United States. Therefore, his "residency" in the District of Maryland is not legitimate because he is not lawfully in this country. Additionally, while any potential familial ties to the District of Maryland might typically militate against a finding of a risk of flight, the opposite is true here. While the Court may not consider the existence of an immigration detainer, it can consider the defendant's fear of deportation. *See Marroquin-Ramirez*, 2025 WL 1248652, at *5. Any reported family ties give him greater reason to fear deportation, as deportation would result in him being separated from his family. Accordingly, any of the Defendant's claimed familial ties to the District of Maryland give him more reason to abscond.

Of most concern is that while the Defendant has been in the District of Maryland, he has had a history of domestic violence-related incidents with a person identified as his former romantic partner and the mother of his child (hereinafter "Victim 1"). Specifically, on August 10, 2021, a protective order was filed against the Defendant in the District Court for Montgomery County, under case number 0602SP035542021. An affidavit was sworn out by Victim 1 alleging that the defendant forced her out of a taxi, grabbed her forcefully by her hair, walked her to another location, and otherwise restricted her movement until he left. This matter was heard and reviewed

11

by an Associate Judge on the District Court, and a temporary order was issued on August 12, 2021. On August 20, 2021, the Defendant appeared before the Court, and after consenting to the matter, a final order of protection was issued.[2]

Again, on February 4, 2024, a protective order was filed against the Defendant in the District Court for Prince George's County, Maryland, under case number D-05-FM-24-002842. An affidavit was sworn out by Victim 1 alleging that during a child custody exchange involving their 7-month-old daughter, the Defendant was inebriated, became belligerent, and then tried to strike her and another child. Victim 1 reported that the defendant subsequently hit and strangled her. An interim protective order was issued on February 2, 2024. A temporary order of protection was issued on February 6, 2024. Following that, a hearing was held in the District Court, and all parties appeared. After hearing and reviewing the matter, a final order of protection was issued by the Court on February 13, 2024, with an expiration date of one year later.

That the Defendant has engaged in domestic violence-related conduct requiring a protective order on two separate occasions involving Victim 1 (and his young daughter) is troubling. Not only does it further illustrate his inability to respect the law and follow court orders, but it also demonstrates that he does not have the stable family structure needed to ensure he will not flee. When considering the Defendant's unlawful status and lack of community ties, as well as his repeated history of domestic violence-related conduct and protective orders, he is a considerable flight risk. Therefore, this factor weighs in favor of his detention.

**D.     The Nature and Seriousness of the Danger to Any Person or the Community**

---

2.     The protective order materials discussed herein for case numbers 0602SP035542021 and D-05-FM-24-002842, contain the victim's sworn affidavit, the related police department reports, photographs of injuries to the victim, the temporary and final orders of protection, and related court docket entry pages. Due to the sensitive information contained in these materials and the volume of pages, the Government has not attached these documents as exhibits to this filing. However, copies have been produced to the defense and can be made available to the Court for inspection and review at any future hearing.

The Government has been made aware of the Defendant's continued conduct following his arrest on June 6, 2025. As reported by ICE officers, the Defendant was transported from the Ross Department Store in Catonsville to the George H. Fallon Federal Building in downtown Baltimore to initiate the removal process. During the transport, the Defendant was physically aggressive with federal agents and continued his non-compliant behavior. While at the Federal Building, the Defendant continued to be combative, which resulted in his being physically restrained. This behavior, combined with the other facts of this case described herein and the Defendant's background and criminal justice contacts, raises significant concerns regarding his presence at trial or future proceedings if released pending trial, and demonstrates a clear threat to the safety of the community. As a result, this fourth factor also weighs in favor of detention.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that no condition or combination of conditions will assure the Defendant's presence at trial, nor the safety of the community, and requests that the Defendant be detained pending trial.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

   /s/
Gerald Collins
Assistant United States Attorney
Carolyn Mills
Special Assistant United States Attorney
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201-2692
(410) 209-4800

## **CERTIFICATE OF SERVICE**

This is to certify that on this day, October 15, 2025, a copy of the foregoing filing was electronically filed and delivered via ECF to all counsel of record in this matter, as well as sent via email.

                                                      _/s/_
                                        Gerald A. A. Collins
                                        Assistant United States Attorney